### OF THE

## STATE OF MISSOURI

#### AT THE

## APRIL TERM, 1919.

---

### (*Continued from Vol.* 277.)

---

## LOU McFARLAND, Appellant, v. KATHERINE Mc-FARLAND et al; SALINA McFARLAND, by GEORGE P. WRIGHT, Her Guardian Ad Litem, Appellant.

#### Division One, April 7, 1919.

1. **DOWER: Limitations: Purpose of Statute.** The purpose of Section 391, Revised Statutes 1909, declaring that "all actions for the recovery of dower in real estate, which shall not be commenced within ten years from the death of the husband, shall be forever barred," was to limit the widow's quarantine to ten years and such other time as is necessary to perfect the judicial assignment of her dower, and also to put an end to the uncertainty which hangs over every title in which a deed appears which does not contain a release of dower.

2. ———: **Assignment: Suit.** Dower may be assigned by parol. The widow being entitled by common right, nothing is required but to ascertain her share, and that having been done and she having entered, the freehold vests in her without livery of seizin or writing, or decree of court. No judicial process is necessary to establish her right to dower, unless the right is withheld by the heir or those claiming under him in possession of the lands.

3. ———: ———: **Sharing in Rents: Cotenants: Suit to Recover Dower.** Where the heirs acknowledged the widow's right to dower and for

(1)

McFarland v. McFarland.

eleven years she annually received one-third of the rents, through one of the heirs who acted for her and the others, she and they were in full possession all the time as cotenants, and she could not have maintained suit for dower, because she was already in possession. Such a suit she could not maintain until a disaffirmance of said agreement for the division of the rents and her exclusion from possession.

4. ———: ———: ———: Limitations: Section 391. Where the heirs have acknowledged the right of the widow to dower by annually for eleven years paying her one-third of the rents, which were collected for her and them by one of the heirs, and she and they were therefore cotenants in possession, she was not required by Section 391, Revised Statutes 1909, declaring that "all actions for the recovery of dower in real estate, which shall not be commenced within ten years from the death of the husband, shall be barred," to begin her suit to recover dower until the parol assignment was disaffirmed and she was deforced of her right.

5. ———: Limitations: Section 391: Estoppel. An acknowledgment of the widow's right to dower in the land, the payment to her annually for eleven years of one-third the rent, and their joint possession through one of the heirs as agent for all, constituted a parol assignment of dower to her, and estop the heirs from pleading Section 391, Revised Statutes 1909, as a bar to her action to recover dower, brought by her after they had breached the parol assignment and disseized her. The estoppel arises, not by reason of some fact agreed or assumed to be true, but as the legal effect of carrying the contract into execution.

6. ESTOPPEL: Available Against Plea of Limitations. Estoppel by contract and the conduct of the parties is available against a plea of the Statute of Limitations. If the widow, by agreement with the heirs was acknowledged to have dower in land and in keeping therewith one-third the rents were paid to her and she was therefore in joint possession with them, they cannot take it from her, by claiming the statute has barred her suit to recover her dower, without returning to her the consideration she had surrendered therefor, which was her legal right to sue for an allotment of dower before the statutory limitation had expired.

Appeal from Nodaway Circuit Court.—*Hon. Charles H. Mayer*, Judge.

REVERSED AND REMANDED.

*Cook & Cummins* for appellants.

(1) The Statute of Limitations will not begin to run against the widow, and in favor of the heirs,

until such time as they assume and assert an adverse and hostile possession against her. In other words, so long as the widow and children, in unison and in harmony, occupy the premises, the law through public policy will not bar the rights of either. It favors and encourages such relations, and does not compel their destruction, by driving the parties into the courts through fear of the Statute of Limitations. Chrisman v. Linderman, 202 Mo. 614. (2) The widow holding and enjoying the dower right, and the heirs of the husband holding and enjoying their rights as such, were tenants in common. R. S. 1909, sec. 2778; 14 Cyc. 961. (3) The possession of one tenant in common is the possession of all, and the statute does not begin to run in favor of one until he begins an open, hostile and adverse possession against the others and makes that claim known to them. 1 R. C. L. 742; Wood on Limitations, 621; Hynds v. Hynds, 253 Mo. 33.

*Shinabargar, Blagg & Ellison* for respondents.

(1) Sec. 391, R. S. 1909, bars the appellant widow's action for the recovery of dower. (a) The opinion has been judicially expressed that this law was passed to prevent the further enforcement of the harsh doctrine announced in Johns v. Fenton, 88 Mo. 64, to the effect that no amount of adverse possession would bar an action for the recovery of dower, the widow in that case having commenced her action thirty-eight years after the death of her husband. Robinson v. Ware, 94 Mo. 688. (b) This being the reason for the enactment, it is clear the intention of the Legislature was to provide a Statute of Limitations applicable to dower, which would not depend on adverse possession for its operation. (2) The plain language of the statute furnishes the most convincing proof that its operation is not dependent upon adverse possession, as between the widow and heirs or anyone else. (a) It absolutely and unequivocally fixes the time at which it shall begin to run at a day certain—the date of the death of the

husband—which is the time when the cause of action accrues. (b) It says all actions for dower shall be for- ever barred unless commenced within the time limited. (c) It is levelled at the widow, or her assignee, because it bars actions for the recovery of dower claimed or demanded, (not actions for the assignment of dower). The only one who would claim or demand dower or sue to recover it would be the person entitled to the dower. If an heir or creditor should proceed under Section 379, Revised Statutes 1909, to have dower set out, his action would not be for the recovery of dower, but for its assignment to the widow. (d) Section 391 is imbedded in Article 16 of Chapter 2, which defines dower and enumerates its incidents. Evidently it is intended to constitute an integral part of the law of dower and is to be considered in connection with Sections 367 and 369, which prescribe the procedure by which a widow may sue for the recovery of her dower. Section 367 runs in the disjunctive and contemplates many instances in which a widow may sue for dower though she be in possession of the land in which it is claimed, or be receiving rents therefrom. Section 391 bars in ten years from the death of the husband all rights of action con- ferred by Sections 367, 369, and the other sections of the article on dower. (e) Section 391 is like our general Statutes of Limitation barring personal actions (See secs. 1887 to 1915, R. S. 1909), which admittedly do not involve any question of adverse possession, and wholly unlike the limitation statutes in which adverse posses- sion is a necessary element (See secs. 1879 to 1886 R. S. 1909). These expressly make possession an essential ingredient. (4) Section 391 has been noticed by the Supreme Court of this State in five cases, and in all of them has been held to impose an absolute limitation on an action for the recovery of dower. Robinson v. Ware, 94 Mo. 678; Harrison v. McReynolds, 183 Mo. 539; Kennedy v. Duncan, 224 Mo. 662-3; Jodd v. St. L., I. M. & S. Ry. Co., 259 Mo. 239. (5) If Section 391 runs a- gainst a widow in possession of the land in which dower

is claimed, or one receiving rents therefrom, then the heirs would not be estopped to claim the protection of the statute because of their conduct in permitting the widow.to assume such rights, for such conduct would not be inconsistent with the running of the statute or with reliance upon it. 11 Am. & Eng. Ency. Law (2 Ed.), 422. (a) The widow's ignorance of her rights and duties did not exempt her from the operation of the statute. 25 Cyc. 1212; 19 Am. & Eng. Ency. Law (2 Ed.), 213; Callan v. Callan, 175 Mo. 360; State ex rel. v. Yates, 231 Mo. 283; Johnson v. United Rys., 243 Mo. 295; Putnam County v. Johnson, 259 Mo. 83. (b) But the ignorance of the heirs and the widow's equal opportunity to inform herself of her rights would make the doctrine of estoppel inapplicable to the heirs. 16 Cyc. 730, 741; 11 Am. & Eng. Ency. Law (2 Ed.), 434; De Lashmutt v. Teetor, 261 Mo. 440; Keeney v. McVoy, 206 Mo. 57; Harrison v. McReynolds, 181 Mo. 548. (c) The payment of the rent by the heirs to the widow did not evidence an intention to waive the statute barring the widow's action for assignment of dower, because she was equally entitled to such rent before dower was assigned. Sec. 257, R. S. 1909. (d) The recognition of the widow's unassigned right of dower did not estop the heirs because she did in fact have that right, at the time. Sec. 345, R. S. 1909. (e) It was not the duty of the heirs to have dower assigned to · the widow. Sec. 379, R. S. 1909; Fischer v. Siekmann, 125 Mo. 178; Moran v. Stewart, 246 Mo. 474. (6) The widow and heirs were not tenants in common. (a) The premise on which the appellant has based her whole theory of the case is that the widow and heirs were tenants in common. This is not the law in Missouri or most other jurisdictions. 14 Cyc. 961; 10 Am. & Eng. Ency. Law (2 Ed.), 146; 38 Cyc. 3; 17 Am. & Eng. Ency. Law (2 Ed.), 651; Wigley v. Beauchamp, 51 Mo. 547; McClanahan v. Porter, 10 Mo. 751; In re Final Settlement of Tyler, 40 Mo. App. 383. (b) The prime essential of a tenancy in common is unity of pos-

session. The widow has no joint right of possession in virtue of her dower, which, until assigned, is only a right or chose in action. 14 Cyc. 960; 10 Am. & Eng. Ency. Law (2 Ed.), 146; Waller v. Mardus, 29 Mo. 27; Carey v. West, 139 Mo. 177.

BROWN, C.—Plaintiff, Lou McFarland, the widow of Seth McFarland, deceased, instituted this action in the Circuit Court of Nodaway County on February 9, 1916, against the respondents, children by a former wife and heirs at law of Seth McFarland, who died seized of an estate of inheritance in the lands in controversy May 15, 1904. The land embraced about two hundred acres in Nodaway County. The petition, after stating these facts, proceeds as follows:

"Plaintiff further states that by reason of said marriage, and by reason of the facts herein recited, upon the death of the said Seth McFarland, she became entitled to dower in the above described land and that dower has not been heretofore assigned her, nor has she at any time relinquished her rights to dower in the manner provided by law, nor has she received any equivalent therefor. Plaintiff says that ever since the death of the said Seth McFarland until the 24th day of July, 1915, she and all of the defendants, as the children of the said Seth McFarland, held and enjoyed said lands as tenants in common, apportioning among themtherein, plaintiff receiving from said rents the selves the rents, issues and profits thereof among themselves according to their respective interests therein, plaintiff receiving from said rents the value of her dower interest in the same; but that on the said 24th day of July, 1915, the defendants denied to plaintiff any further right or interest in said lands and now seek to convert plaintiff's said dower interest to themselves and now deny plaintiff's right therein, and seek to wrongfully deforce plaintiff of her dower right in said land and have done so since the said 24th day of July, 1915, to plaintiff's damage in the sum of three hundrd dollars.

"Plaintiff says that the monthly value of the lands and profits of her said dower estate is fifty dollars.

"Wherefore, plaintiff prays judgment for three hundred dollars damages for said deforcement, and fifty dollars per month for the monthly rents and profits of her said dower interest from the rendition of judgment, and for the admeasurement and assignment of her dower in said lands, and for all other and proper relief."

The defendants answered, pleading, among other things, the following:

"Further answering these defendants allege that the right of the plaintiff to dower, if any, in the real estate of which their father, Seth McFarland, died seized of an estate of inheritance, is barred by limitation under Section 391, Revised Statutes 1909."

The plaintiff replied by general denial and pleaded affirmatively as follows:

"For further reply, plaintiff says that at all times after the death of her said husband, in 1904, until the month of July 1915, she, as such widow, and the defendants, as the heirs of her said husband, continued in the possession of said lands, in common, the defendants at all times conceding and recognizing the dower rights of plaintiff, and each year, during the whole of said time, paid to her one-third of the rents of the lands, as for the yearly income of her said dower; and that they at no time denied plaintiff's said right, nor held or claimed to hold said lands adversely to her, all as is set out in plaintiff's petition. Plaintiff says that by reason of the matters herein, and in her petition stated, her dower in said lands is not barred by Section 391, Revised Statutes 1909.

"For further reply, plaintiff says that because of the defendants' conduct in recognizing and conceding plaintiff's dower right during the whole period of limitation fixed in said section, as is stated herein and in her petition, the defendants are estopped from now asserting that her right of dower is barred by said Section 391.

"Further replying, plaintiff says that if said Section 391 by its terms bars plaintiff's right of dower in ten years after the death of her husband, regardless of the fact that she has been in possession of the lands, with the heirs, and her dower right fully recognized, and with no adverse possession claimed against her, the said section is violative of the Constitution of the State of Missouri and is therefore void and of no effect."

When the cause came on for trial Salena McFarland, of unsound mind, was made a defendant. George P. Wright, an attorney at the bar, was appointed by the court her guardian *ad litem* and filed an answer which is not set out in the record. The cause was submitted on an agreed statement of facts which, so far as it affects the matters at issue in this appeal, states that plaintiff is the widow of Seth McFarland and the defendants are his children by his wife who died in 1900. He was married to plaintiff in 1902 and died May 15, 1904, without having any children by her.

The land in which plaintiff seeks to have dower assigned was a part of a large tract of which one John McFarland died seized of an estate of inheritance in 1872, leaving his widow, the defendant Salena McFarland, and eight children, among whom were Seth McFarland and J. E. McFarland, who afterward acquired the interest of the other children, subject to the dower interest in the entire tract of the defendant Salena who at the time of the trial was eighty-three years old. Seth and J. E. afterward partitioned the land between themselves, the former acquiring the entire title of the land in question, subject to the rights, if any, of their mother Salena. A small tract of the land was omitted from the deeds made in this partition, but it is admitted that the equitable title was in Seth at the time of his death, so that the omission is unimportant.

With respect to the dower of Salena McFarland "the facts are that for a number of years after the death of her husband she lived upon said 314 acres of

land and managed the same. Finally she discontinued her management of the farm and thenceforward the possession of said lands was turned over to the said Seth McFarland and J. E. McFarland, each assuming charge of that part of said 314 acres which was deeded to him in said voluntary partition. From that time forward each paid the said Salena McFarland an annuity of $100 per year and each paid all the taxes on the land occupied by him and kept up and constructed improvements thereon, without any contribution from the said Salena McFarland, it being the understanding that the payment of said annuity and taxes and the keeping up and construction of said improvements should be and it was accepted by the said Salena McFarland as the income from her dower interest in said lands. The said Salena McFarland has never relinquished her right of dower in any said lands or conveyed the same, and there has been no possession of any of said lands on the part of any of the parties to this litigation, hostile or adverse to her claim of dower therein, and unless said claim is barred by Section 391, Revised Statutes 1909, in the same manner as the claim of dower on the part of plaintiff is asserted by the defendant to be barred, then the said Salena McFarland likewise has dower in said land.''

With respect to the dower of the plaintiff, the agreed statement is as follows:

''Immediately following the death of the said Seth McFarland the widow and children took possession of said lands in the sense that the children as heirs were all mutually recognized, and through E. H. McFarland, one of the defendants and one of the heirs of Seth McFarland, the land was rented for and in behalf of all in accordance with their respective rights as they believed them to be from year to year. It was known to all of them that the widow had a dower interest therein, which they understood to be a one-third interest for life, and during all the time from the death of the husband in 1904, down to the month of July, 1915, all of

the heirs fully recognized this dower right of the widow, neither the widow nor any of the heirs knowing that there was a dower Statute of Limitations. They paid to her each and every year one third of the net proceeds of the rents of the land, and divided the other two-thirds among the children in equal shares. None of them lived upon or occupied the land at any time, but during all the time  kept it rented as above stated. The heirs at no time prior to 1915 ever denied plaintiff's dower right and never at any time held the land, or claimed to hold it, adversely to her rights as doweress.

"On July 24, 1915, the defendants, through their attorneys, notified plaintiff, in writing, that her right of dower in said lands was barred by the Statute of Limitations, and from that date they have denied to her any interest in the lands and have claimed to hold it adversely to her, and have collected the rents for the year 1915, amounting to seven hundred and twenty-five dollars and have not paid to her any part of the same.

"Plaintiff filed this suit, praying for the assignment of dower, on the 9th day of February, 1916, more than ten years after the death of her husband. The lands remain unsold and unconveyed since the death of the husband, and there is no question involved because of the rights of any purchaser. The sole question is as between the widow and the heirs, is her right of dower barred by the Statutes of Limitations, under the above facts."

Upon these facts the court held that both plaintiff and defendant Salena McFarland are barred by the provisions of Section 391, Revised Statutes 1909, by reason of the fact that no action for the recovery of dower was commenced by the plaintiff within ten years from the death of her husband on May 15, 1904, and that no action for the recovery of dower was brought by the defendant Salena McFarland within ten years from the death of her husband in 1872, and so adjudged, and that they take nothing by reason thereof; and also judged the costs against the plaintiff.

From this judgment both the widows appealed.

I. This appeal presents the sole question whether the plaintiff is barred from her action by the provisions of Section 391, Revised Statutes 1909. While the dis-

**Assignment.** cussion of that question will necessarily cast light upon the rights of the appellant Salena McFarland, the condition of the record requires that the plaintiff's appeal be first disposed of. To aid us the respondents have favored us with a brief so lucid in argument and rich in authority as to greatly lighten our labor.

The statute which we must construe in its application to plaintiff's suit provides: "All actions for the recovery of dower in real estate, which shall not be commenced within ten years from the death of the husband, through or under whom such dower is claimed or demanded, shall be forever barred."

This special Statute of Limitations was enacted in 1887 in the following form:

"Section 1. All actions for the recovery of dower in real estate, which shall not be commenced within ten years from and after this act takes effect, or within two years after the death of the death of the husband, through or under whom such dower is claimed or demanded, shall be forever barred: *provided,* however, that if any person entitled to bring an action for the recovery of dower at the time this act takes effect be under legal disability to bring such action, such person may bring such action after the time herein limited and within three years after such disability is removed; *provided,* further, that the limitation in this act specified shall not be deemed to apply in any case where the widow is in possession of, and enjoying the mansion house of her husband, as specified in Section 2205, Revised Statutes of the State of Missouri of 1879, until she shall have been evicted therefrom."

In 1889, it was amended by striking out both provisos and the words "within two years from and after

this act takes effect or," and reenacting it in the form in which we first quoted it. Much is said by the respondent in argument about the motive of the Legislature in making this change and its influence upon the construction of what is left. We do not think it necessary to follow the line of this reasoning, for the motive is evident in the result. It exhibits the intention to limit the quarantine of the widow to ten years and such futher time as is necessary to perfect the judicial assignment of her dower, and also to put an end to the uncertainty which hangs over every title in which a deed appears which does not contain a release of dower. The statute should, no doubt, be reasonably construed for the correction of the evil at which it was evidently aimed, and this construction, including not only its purpose for the future but all the conditions which is superseded, as well as the words in which it is now expressed, manifests the intention of the Legislature. All parties to this contest agree to its meaning as it now stands, but disagree as to its application to the facts of this case. The appellant says that it is unthinkable that the Legislature intended to impose upon the widow the duty to sue for that which had already been surrendered to her and of which she was already in the full enjoyment. This leads us to inquire whether or not, during the ten years which succeeded the death of her husband, she was in the possession and enjoyment of her dower.

We said in Robinson v. Ware, 94 Mo. l. c. 683: "It is sometimes said that an unassigned dower is a chose in action, but upon the death of the husband, the inchoate interest becomes consummated, and her right to demand and enter upon the enjoyment of that interest commences. [1 Scrib. on Dower, 618.] Call it what we may, it is an interest in real estate." When plaintiff's husband died her interest, theretofore inchoate, became a right to demand the thing itself. If it was not givn her she had the right to sue for its delivery into her possession. If it was delivered it is unnecessary to say that no right of action existed,

for the end of the law was in her hands.  It was not paper to which she was entitled, but a real thing, that part of the land itself or its product which represented the interest with which the law endowed her.

"Dower may be assigned by parol.  The widow being entitled by common right, nothing is required but to ascertain her share; and when that is accomplished by the assignment, and she has entered, the freehold vests in her without livery of seisin or writing.  And it is true, not only when the dower is assigned in the manner prescribed by statute, but also where a different mode of assignment is adopted by agreement; as where a rent issuing out of the lands, or an undivided third part is allotted to the widow."  [2 Scribner on Dower (2 Ed.), 73.]  The same is the doctrine of this court.  [Johns v. Fenton, 88 Mo. 64, l. c. 68.]  In that case the cause was remanded for the purpose of trying the question whether dower had been assigned by parol.

Our statute of dower carries plainly written upon its face the theory that no judicial process is necessary to establish the rights of the widow as doweress, unless those rights are withheld by the heir of those claiming under him in possession of the lands.  The whole statutory structure rests upon the presumption that the parties in interest may and will voluntarily adjust their rights in that relation without the intervention of the courts.  It authorizes suit to be instituted under certain conditions which imply failure to adjust the matter fairly by voluntary action.  The first of these is that she be deforced of her right.  This means in the colloquial as well as legal sense the wrongful withholding.  The next condition precedent is that she cannot have it without suit.  This would seem to require that she should first use some effort to obtain her right without judicial assistance.  The next condition is that the dower has been unfairly assigned to her.  This is intended to authorize her to reject any proposition of the heir which she deems unfair.  The next is that it has not been assigned within two years from the death of her husband.  This is evidently to con-

strain her to wait two years for the bringing of suit for the heir to move. None of the conditions except the first ever existed in this case. Her dower was promptly and lawfully assigned to her and she was in full possession of it during a period of eleven years after the death of her husband, receiving one-third of the rents and profits of the premises each year, through one of the heirs who acted as her agent as well as the agent of all. The possession was the possession of all, as tenants in common, from the time the arrangement was made until after the expiration of ten years from the death of her husband, when she was deforced and promptly brought this suit. As we said in Investment Company v. Curry, 264 Mo. 483, l. c. 499, when they refused to attorn to her further, the relation of tenants in common ceased and the relation of tenant in dower unassigned revived. There was not a moment from the death of her husband until she received the letter of July 24, 1915, in which the defendants notified her that they would recognize her right no longer, that an action under the Dower Statute would lie. During the entire eleven years she was in possession, receiving everything to which she was entitled as her dower under the valid assignment which they now repudiate.

Investment Company v. Curry, supra, was decided by this court on the theory we have stated. In that case there had been no attempt to assign the widow's dower, or to make any adjustment between her and the heirs, or in any way to segregate or identify her interest. The rent of the entire property, which was insufficient in amount, was turned over to her by the husband's administrator for six years after his death, after which it was held adversely to her, the entire rent being paid to the heirs for a period of fifteen years before the bringing of the suit. We held that when the rent was withheld from the widow by the heirs, the tenancy in common, which under our statute always results from the joint possession of two or more owners under distinct titles, ceased, the widow's es-

tate reverted to its original status, which we have described in Robinson v. Ware, supra, as a dower interest in the land against which the special statute ran. The pleader who drew this peition evidently had the Curry case, which had then just been published, before him, and drew it in exact accordance with the theory of that case.

Having held that the parol agreement between the plaintiff and defendant heirs set out in the agreed statement constituted a valid assignment of her dower, it follows that no right of action accrued to her under the terms of Section 372 until the disaffirmance of said agreement and the exclusion of the plaintiff from her joint possession thereunder in 1915. We think that it also logically follows that the special limitation of ten years from the death of the husband contained in Section 391 does not apply. We cannot charge the Legislature with the absurd intention to bar causes of action which do not accrue until after the period of limitation has expired. Section 391, it will be observed, purports to bar all actions for the recovery of dower whether they be brought under the dower statute, the statute relating to partition, which expressly authorizes them, or in ejectment. Its terms include alike all classes of actions for the recovery of land held by that title, which would hang upon a slender thread were it interpreted literally, without regard to its purpose; a thread which might be cut or broken by any disseizor.

In Chrisman v. Linderman, 202 Mo. l. c. 614, this court, after quoting from Coke upon Littleton with approval that "a maxim is a proposition to be of all men confessed and granted without proof, argument, or discourse," referred approvingly to certain legal maxims on the subject of dower as follows: "The law favors dower; it is a reward of chastity, therefore it is to be preserved." [Coke, Litt. 31a.] Again: "In doubt the response is in favor of dower, liberty, innocence, of the possessor, of the debtor and of the de-

fendant." [Brown Law Dic. Appendix—*In dubio pro dote, etc.*] Again: "Law favoreth life, liberty, dower." [14 Bac. 345.] Again: "Where there is marriage, there is dower." [Bract. 92.] And the converse; "No marriage, no dower." [4 Barb. (N. Y.) 194.] We will not presume without a clearer expression of that purpose, that the Legislature, in Section 391, intended to violate these time-honored sentiments by providing that the widow who is disseized of the dower which has been assigned to her shall have no remedy for its recovery.

II. We also think the heirs are estopped by the contract under which they placed and continued the plaintiff in joint possession with themselves of the land in right of her dower during a period of eleven years and their conduct in then disseizing her, from pleading the special Statute of Limitation to this action. We have already held that this agreement and the conduct of the parties under it constitute an assignment of her dower and we do not think they may now after disseizing her, plead this statute in bar of her right to recover it. We need not stop to inquire whether she has another remedy in ejectment or partition. She has selected the remedy which the statute gives her for the deforcement of her dower. They have repudiated the contract under which she stood seized and could only be deforced by its breach. Can they now interpose a defense which can only exist as a consequence of her own faithful compliance with the agreement and can only become available to them by their repudiation of its terms? In considering this question it is helpful to bear in mind the fact that estoppel *in pais* stands simply on a rule of law which forcloses one from denying his own expressed or implied admission which has in good faith and in pursuance of its purpose been accepted and acted upon by another. This admission may consist of the misrepresentation of a fact by which the other is induced to act to his detriment or it may arise out

*Estoppel.*

of contract by which one is estopped from denying that which he has expressly or by implication agreed to be true. A 'familiar incident of estoppel by contract is found in the rule that the tenant is estopped from denying the title of his landlord. Estoppel by contract is the title under which the present incident classifies itself. This class of estoppels, as is said by Bigelow (Bigelow on Estoppel, 6 Ed. 496), ''being founded upon contract, it can seldom be an answer to the alleged estoppel, unlike the case of estoppel by conduct, that the party supposed to be estopped acted in ignorance of the facts and under mistake.'' In this case the estoppel arises, not by reason of some fact agreed or assumed to be true, but as the legal effect of carrying the contract into execution (Id. 547). It is upon this principle that the estoppel of the tenant to which we have already referred does not end with the expiration of the contract of lease, but continues until the actual surrender of the possession.

In this case, as we have seen, no action would lie by the plaintiff to recover her dower while the contract by which she was receiving it to her satisfaction was in existence. A case of estoppel by contract and the conduct of the parties thereon is presented in its simplest form. The plaintiff had a cause of action for her dower. By this arrangement she received in possession the thing itself. The defendants could not take it from her without returning the consideration she had surrendered therefor, that is to say, the right to sue. This is accomplished by estoppel. This same question was determined in Dry Goods Co. v. Goss, 65 Mo. App. 55. In that case the defendants had agreed to settle the claim in connection with another which it claimed to hold against the plaintiff as a counterclaim, when it should be liquidated and the title of defendants thereto ascertained. To wait for this settlement the plaintiff postponed bringing her suit until after the period of limitation had expired. No fraud or misrepresentation entered into the case. It was held that defendants

278 Mo.—2

were estopped from pleading the Statute of Limitations. This case was afterward approved and followed in Railway Company v. Commission Company, 71 Mo. App. 299, 304. The doctrine of estoppel by contract and the conduct of the parties thereunder has found frequent application against the plea of the Statutes of Limitation and in that respect the statute in question is no different from all others. There is nothing in its terms which shows the intention to permit its use as an accomplice to hold the victim while the robber does his work.

III. The answer of Selena McFarland is not in the record. It is admitted that her right of dower has always been recognized since the death of her husband in 1872 and that she has received an "annuity" of $200 per year from his heirs, $100 of which *Money or Land.* has been paid by Seth McFarland and, since his death, by his heirs; that "the understanding that the payment of said annuity and taxes and the keeping up and construction of said improvements, should be and it was accepted by the said Salena McFarland as the income from her dower interest in said land." There is nothing in the record to indicate whether or not the heirs ever denied their liability to pay this annuity, or to indicate whether Salena, through her guardian *ad litem,* is now claiming land or money. We cannot therefore safely dispose of her rights except in so far as they come within the principles already stated.

The judgment of the circuit court is reversed and the cause remanded for further proceedings in accordance with the foregoing opinion.

*Railey, C.,* concurs in result.

PER CURIAM:—The foregoing opinion by BROWN, C., is adopted as the opinion of the court. All of the judges concur; GRAVES, J., in separate opinion.

GRAVES J. (concurring.)—My views of this case can be shortly expressed. To my mind Section 391,

Revised Statutes 1909, is an absolute bar to an action to recover dower, where such action is brought, for the first time, more than ten years after the death of the husband. This is the plain language of the law. But this construction of the statute does not necessarily bar the present action. The facts in this case show that the action is not so much an action to have dower assigned (by agreement of parties), but from which dower right the doweress has been but recently deforced. The dower can be assigned as well by agreement as by actual court action, just as partition of real estate can be had by agreement as well as by court action. The statute, supra, refers to an action for the original assignment or ascertainment of dower, and has no reference to a suit to enforce a dower right already agreed upon and assigned, but from which there was thereafter a deforcement, as in this case. Here the dowers involved were in equity and good conscience, and at law, as successfully assigned as if done by court action. This was done within the ten years allowed by the statute, supra. Afterward the parties are deforced of this assigned (assignment made by agreement of parties) dower, and this action is broad enough to reinstate them to the rights of which they have been deforced. I further agree that the acts of the defendants are such as to estop them from maintaining that the statute (Sec. 391, R. S. 1909) applies. For these reasons, I concur in the result reached by our learned commissioner.